**TODD A. STUBBS, ESQ.**
**LEVI G. STUBBS**
**STUBBS LAW, P.C.**
110 W. Main Street
P.O. Box 169
Manhattan, MT 59741
Phone: 406.282.0515
Facsimile:406.284.4042
Email: law@stubbslawpc.com
　　　　levi@stubbslawpc.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF NORTH DAKOTA
# WESTERN DIVISION

| | |
|---|---|
| BRAXTON AVERY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>E&M SERVICES, LLC, and DOES 1-25,<br><br>　　　　Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Civil No.: |

Plaintiff, BRAXTON AVERY ("Plaintiff"), by and through his undersigned counsel, brings this Complaint and Demand for Jury Trial ("Complaint") against Defendants, E&M Services, LLC ("E&M") and Does 1-25 alleges as follows:

## INTRODUCTION

This is an personal injury action Plaintiff brings against named defendants, E&M Services, LLC ("E&M") and Does 1-25.  Plaintiff was seriously injured

while working on an oil well ("Well") in the area of Williston, North Dakota. Plaintiff was at the time of his injury employed with Eklipse Resources, LLC ("Eklipse"). Statoil Oil & Gas, L.P. ("Statoil") owned and operated the lease where the Well was located, including ownership and operation of the flow lines running from the Well to a Separator/Tank. Statoil hired Eklipse to perform, in addition to other functions, preventative maintenance on shut in wells. In addition, Statoil hired and approved E&M to be the production maintenance consultant for the Eklipse work crew relative to the crews' work on the shut in Well. Plaintiff was part of the Eklipse crew working on the shut in Well. At the time Plaintiff sustained serious injury, both E&M and Eklipse were both working on the Well, the flow lines and/or Separator/Tank while it was shut in. E&M had ultimate control and oversight of the operations being conducted on the Well site. This control and oversight included, the Eklipse crews' work operations being performed at the Well site at the time Plaintiff was seriously injured. For the reasons stated below, E&M was negligent in its charged upon control and oversight of the shut in Well site operations causing Plaintiff's serious injuries.

**PARTIES**

1. Plaintiff is an adult resident and citizen of the City of Odessa, County of Ector, State of Texas.

\\

2. Defendant E&M is a North Dakota limited liability company licensed to do business in the State of North Dakota, in good standing, with its principal place of business at 305 12th St SE, P.O. Box 1275, Watford City, North Dakota, 58854-1275.

3. Does 1-25 are persons and/or entities who are unknown at this time and may be liable in whole or in part for the Plaintiff's damages.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 and 1367, and venue is properly set in the United States District Court for the District of North Dakota pursuant to 28 U.S.C. § 1391.

5. The causes of action alleged herein arise from the factual allegations occurring in this judicial district.

6. Diversity jurisdiction is established at the filing of the Complaint. *Alfson v. Brigham Oil & Gas, L.P.*, No. 4:09-CV-076, 2009 WL 4907022 *2 (D.N.D. Dec. 11, 2009).

7. As of the filing of this Complaint, Defendant E&M is organized in the State of North Dakota.

8. As of the filing of this Complaint, Plaintiff resides and is domiciled in the State of Texas.

9. The amount in controversy is in excess of $75,000.

## ALLEGATIONS COMMON TO ALL COUNTS

10. Production from an oil well such as the Well subject to this action produces gas, oil and water that flow from the well bore to the surface. The goal is to separate these liquids using a Separator/Tank that separates these liquids.

11. This action involves a shut in Well. A shut in well is a well shut in when the wellhead valves are closed, shutting off production. Shut in of a well is typically done in the instance while waiting for maintenance to be completed, for oil transportation to another location or for the market to improve.

12. A wellhead is a device located on the surface used to hold in place the vertical tubing that runs vertically from the well bore to the surface. Subject to this action, there were two valves on the well head for purposes stopping the oil, gas and water from surfacing.

13. When the valves are closed, there is in instances substantial shut in pressure waged against one or the other valve as the case may be. This shut in pressure is caused by the oil, gas and other liquid trying to reach the surface.

14. For purposes of production of the oil coming from the Well, when the values are opened, this allows the gas, oil and other liquid (water) to flow through a flow line ("Flow Line"). The Flow Line subject to this action ran

from the Well to the Separator/Tank located in a shack. The Separator/Tank then serves its purpose to separate the gas, oil and water flowing from the Well to the Separator/Tank.

15. Eklipse and E&M were working on the Statoil shut in Well located in Williston, North Dakota. At all relevant times, Plaintiff was working at the Well site as an Eklipse employee.

16. Statoil owned and operated the lease for the Well, including the Flow Lines and associated Separator/Tank.

17. Eklipse was hired by Statoil to perform, in addition to other functions, preventative maintenance indirectly on the shut in Well, and directly on Flow Lines and associated Separator/Tank.

18. Statoil hired, approved and authorized E&M to be the production maintenance consultant for the Eklipse crew. At the time of Plaintiff's Injury, Plaintiff was a member of this Eklipse crew.

19. Both E&M and Eklipse were working on the Well while it was "shut in."

20. E&M had ultimate control and oversight over the operations relative to Eklipse's work on the Well including work performed by Plaintiff.

21. Eklipse was in charge of putting the lock out/tag out kit on the Flow Line running between the Well and Separator/Tank typically when Eklipse was

not on site working on these components. Eklipse followed this lock/tag out protocol during its work at the Well site.

22. There was not any preventative engineering utilized with regard to pressure build ups in the Flow Line running between the Well and the associated Separator/Tank, such as a bleed-off point or any pressure gauges.

23. Prior to and in close proximity to August 11, 2014, Eklipse capped the flow line from the Well ("Capped Flow Line") under the supervision and oversight of the E&M consultant. The Capped Flow Line was capped for purposes of allowing work to be performed on the Separator/Tank. Eklipse left the Well site with the Capped Flow Line capped while this preventative maintenance on the separator/tank was being done.

24. After Eklipse left the Well shut in and Flow Lines capped, the E&M consultant shut the ball value on the well head which is considered a fail safe valve. However, the E&M consultant negligently failed to shut off the main value on the shut in well.

25. Subsequently, Eklipse was not able to return to the Well site for a number of days because of flooding.

26. During the time the Eklipse crew was off site, the fail safe ball valve failed. With the failing of the ball valve and the main valve negligently left open by

the E&M consultant, oil, gases and/or water were able to escape from the Well and into and through the capped Flow Line.

27. Over the next couple days after Eklipse left the Well site, the oil, gas and/or water reached the cap on Flow Line which caused substantial pressure to build against the cap on the Flow Line.

28. The subsequent pressure build up resulting from E&M and the E&M consultant's negligent failure to shut the main valve rendered the Capped Flow Line unsafe to access or perform work on.

29. When Plaintiff, as an employee of Eklipse, returned to the Well to complete the preventative maintenance and reinstall the parts Eklipse had disassembled, Plaintiff, not knowing of the substantial pressure being pressed against the cap of the Flow Line, opened the Capped Flow Line. The cap to the Capped Flow Line blew off as a result of the pressure build-up, struck Plaintiff in the face and proceeded to travel through a skylight and land 50 feet away from the shack Plaintiff was working in.

30. As a result of being struck in the face by the cap of the Capped Flow Line, Plaintiff sustained serious injuries.

31. But for E&M consultant's negligent failure to shut the main valve off, Plaintiff's serious injuries would not have occurred.

## COUNT I: NEGLIGENCE OF E&M

32. Plaintiff incorporates by this reference herein paragraphs 1-31 as set forth above.

33. A *prima facie* claim of negligence requires the plaintiff to prove: 1) duty; 2) breach of that duty; 3) causation; and 4) damages. *Chegwidden v. Evenson*, 2015 ND 131, ¶ 18, 863 N.W.2d 843, 848-49 (quoting *Barbie v. Minko Constr., Inc.*, 2009 ND 99, ¶ 8, 766 N.W.2d 458).

34. Each person owes a duty to protect another from injury, and that duty applies to those injuries that are foreseeable. *Nelson v. Gillete*, 1997 ND 205, ¶ 40, 571 N.W.2d 332, 340.

35. An employer is vicariously liable for the acts of its employee and agents when done within the scope of the employee's and/or agent's duties and on the employer's/Principal's behalf. *Zimprich v. Broekel*, 519 N.W.2d 588, 591 (N.D. 1994). The individual(s) and/or consultant(s) who failed to shut off the main valve where E&M employees and/or agents.

36. It was foreseeable that if the main valve to the Well was not shut off and the closed fail safe ball valve failed, pressure would build in the cap on the Flow Line during the preventative maintenance and the pressure build up would cause the Capped Flow Line to blow off when it was accessed. This

occurrence is further exacerbate without the utilization of preventative engineering on the same line, resulting in an injury to an Eklipse employee such as Plaintiff.

37. Thus, E&M, having ultimate control and oversight of the operations at the Well, had a duty to protect Eklipse employees from injury as such was foreseeable that if E&M failed to shut off the main valve, with such failure resulting in pressure build up in the Capped Flow Line, such failure would cause Plaintiff's Injury when he attempted to access the over pressured Capped Flow Line. In a nutshell, E&M and its consultant had a duty to ensure that the fail safe ball valve and the main valve was shut off at appropriate times during Eklipse's overall work at the Well site.

38. E&M's and E&M's consultant breached this duty by failing to: 1) ensure the main valve from the Well was shut at all appropriate times during the scope of Eklipse's overall preventative maintenance at the Well site. 2) warn the Plaintiff of the danger presented by the over pressurization against the Capped Flow Line prior to Plaintiff commencing his work on the Capped Flow Line upon his returning to the Well site; and 3) provide preventative engineering on the Capped Flow Line to warn and/or relieve pressure in the situation of the main valve not being shut off.

39. E&M's and E&M's consultant's failure to shut the main valve caused immense pressure to build in the Capped Flow Line resulting in serious injury to Plaintiff when he attempted to access the Capped Flow Line. Additionally, E&M provided no preventative engineering rendering the Capped Flow Line unsafe to access or perform work on.

40. E&M and its consultant did not warn Eklipse or Plaintiff prior to Plaintiff commencing his work on the over pressurized Capped Flow Line about hazards associated with E&M's failure to shut the main valve resulting in serious injury to Plaintiff.

41. As a result of E&M and its consultant's failures in paragraphs 38-40, the cap of the Capped Flow Line blew off when Plaintiff accessed it and struck the Plaintiff in the face, seriously injuring the Plaintiff.

42. As a result of being struck in the face by the cap on the Capped Flow Line and being seriously injured, Plaintiff has suffered damages in the form of past, present and future medical expenses, lost wages, past, present and future pain and suffering, disfigurement and emotional distress.  Section 32-03.2-04, North Dakota Century Code Annotated.

43. All work performed and failed to be performed by E&M and its E&M consultant at the Well, including failure to shut the main value, was done as

an E&M job duty assigned to the consultant at the Well.

44. All work performed by the E&M consultant at the Well, including the consultant's negligent omission in failing to shut off the main valve, was done by the E&M consultant on E&M's behalf in the course of the E&M consultant's work duties.

45. As a result of the facts contained in paragraph 43-44, E&M is directly liable and vicariously liable for acts of the E&M consultant and the damages that are proximately caused by those acts.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

1. Judgment against Defendants;

2. For Defendants to pay all damages Plaintiff has sustained as a result of Defendants' negligence, including, but not limited to past, present and future medical expenses, lost wages, past, present and future pain and suffering, disfigurement and emotional distress;

3. For Plaintiff's reasonable costs, expenses and attorney fees as permitted under North Dakota law; and

4. An award of all other damages the Court deems just and equitable.

\\

## JURY DEMAND

Plaintiff demands a jury on all triable issues.

DATED this 7th day of December, 2018.

                                                   **STUBBS LAW, P.C.**

                                                   /s/ Todd Stubbs
                                                   TODD A. STUBBS
                                                   LEVI G. STUBBS
                                                   110 W Main Street
                                                   P.O. Box 169
                                                   Manhattan, MT 59741
                                                   Phone: 406-282-0515
                                                   Fax: 406-284-4042
                                                   *Attorneys for Plaintiff*