**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Braxton Avery,                                              ) | |
| )                                                                    | |
| Plaintiff,                                   ) | |
| )                                                                    | |
| vs.                                                                ) | |
| E&M Services, LLC, and John Does 1-25,  ) | **ORDER** |
| )                                                                    | |
| Defendant and Third-Party   ) | |
| Plaintiff,                                     ) | |
| )                                                                    | |
| vs.                                                                ) | |
| )                                                                    | |
| Equinor US as successor in interest to       ) | |
| Statoil, Inc.,                                                ) | |
| )                                                                    | |
| Third-Party Defendant and   ) | |
| Fourth-Party Plaintiff,        ) | |
| )                                                                    | |
| vs.                                                                ) | Case No. 1:18-cv-258 |
| )                                                                    | |
| Eklipse Resources, LLC, and United    ) | |
| Specialty Insurance Company,              ) | |
| )                                                                    | |
| Fourth-Party Defendants.   ) | |

Before the court is Third-Party Defendant and Fourth-Party Plaintiff Equinor Energy LP's ("Equinor")[1] Motion for Sanctions, to Compel Deposition of Plaintiff in North Dakota, and to Continue Certain Deadlines.  For the reasons that follow, the motion is granted in part and denied in part.

I.   **BACKGROUND**

Plaintiff's deposition was noticed for October 26, 2020 at 9:00 a.m. in Midland, Texas, by

---

[1] Equinor states that it was improperly captioned as improperly captioned as "Equinor US as successor in interest to Statoil, Inc." (Doc. No. 58).

1

counsel for E&M. Counsel for E&M Services, LLC ("E&M") and Eklipse Resources, LLC appeared in person. Counsel for Equinor appeared by video using a Zoom link. Plaintiff's counsel, Todd Stubbs ("Stubbs"), appeared telephonically.

By all accounts Stubbs failed to comport himself in a professional manner and was fired by the plaintiff midway though the deposition. Shortly thereafter the deposition was aborted.

On November 2, 2020, Equinor filed a motion requesting the court to: (1) impose sanctions for plaintiff's counsel impeding and frustrating the deposition; (2) compel plaintiff to appear for a deposition in the District of North Dakota; and (3) continue certain discovery and expert deadlines.

On November 20, 2020, attorneys David D. Schweigert, Cody Nichols, and Daniel B Bidegaray entered an appearance on plaintiff's behalf as substitute counsel. On December 4, 2020, plaintiff filed a response to Equinor's motion. First, he disavows Stubbs's behavior at the deposition and avers that he should not be sanctioned for it. Second, he requests that his second deposition be conducted in as close proximity to his home in Texas as practicable in light of the current pandemic. Third, he agrees with Equinor that certain deadlines should be continued.

## II. DISCUSSION

### A. Request for Sanctions

Equinor avers that Stubbs's behavior at plaintiff's deposition warrants the imposition of sanctions as it prevented counsel from conducting a fair examination of plaintiff. In so doing, it highlights the following exchanges between Stubbs and counsel for E&M.

> MR. STUBBS: John, you have made your job really hard for yourself. No, no, no. I want to know if you are going to say – and if you are going to say that another contractor did some treatment, then you better lay some foundation, Dude.. You are fucking, no, no, no. You are screwing with a trial lawyer. Okay. What's your foundation?

MR. HUGHES: Let me back up. You know what –

MR. STUBBS: No, no, no, no. I want to know your foundation. I want to know your documents. I want to know everything.

MR. HUGHES: I don't have any.

MR. STUBBS: You are screwing with the wrong dude, man.

MR. HUGHES: Todd –

MR. STUBBS: No. John, John, John. I like you. We get along great. But if you want to do trial, let's do trial. Now, if you're going to ask my client a question about some other company that did treatment, then you set the foundation.

MR. HUGHES: All right.

MR. STUBBS: No, no, no. Listen to me. You are in a lion's den, man. I'm telling you, if you are going to say that there was some other company that was involved, you give me the document. Get the document out. Give me the Bates number out.

MR. HUGHES: I don't have any, Todd.

MR. STUBBS: No, John. Then don't ask my client that question.

MR. HUGHES: All I asked –

MR. STUBBS: No, no, no, no. If you are going to ask my client a question, okay, and it has to do with evidence, and it has to do with something else, some other company or whatever. John, get your evidence out where you have foundation problems. John, this is a problem for all you guys out there. Are you guys all listening?

MR. HUGHES: Oh, yeah.

MR. STUBBS: You are not dicking around with, you know, you are not dicking around with a rookie. I'm going to bury you guys.

MR. HUGHES: All right.

MR. STUBBS: No. Don't ask my client a question about another company that did another thing on a pipe until you set the foundation.

3

MR. HUGHES: All I asked him was if he knew the name.

MR. STUBBS: No, no. What is your question.

MR. HUGHES: My question was did he know the name of the company that painted the inside of the treater. That was my question to Mr. Avery.

MR. STUBBS: Do you know?

MR. HUGHES: No, I don't

MR. STUBBS: All of the other big trial lawyers on the phone right now, do they know?

MR. HUGHES: No.

MR. STUBBS: How do you know? You never even talked to them, the big trial lawyers. Don't ask my client a question -- don't ever ask my client a question that you don't know the fucking answer to. Okay.

MR. HUGHES: Well, okay. All right. We'll move on.

MR. STUBBS: Let's move on.

BY MR. HUGHES:
- Q. All right. So it looks like in the hours here, it looks like you guys were there for about a half a day. Does that sound right assuming you were working 8 hour days?
- A. Yes, sir.
- Q. Okay. Then you would have gone onto a different site, is that right?
- A. Or gone home. I don't remember.
- Q. In 2014 the things were –

MR. STUBBS: Whoa, whoa, whoa. Let's stop right there. How are you to assume that Braxton went to another site?

MR. HUGHES: I will ask him.

MR. STUBBS: No. No. Let's talk about the site where he got hurt. Okay. The other sites he went to, whether he went to them or not, it's irrelevant. Let's talk about the site that your representative fucked up on. Okay. Let's talk about that. And, you know, I've got to tell you something, man, you know, my client, he's lucky, he's lucky to be alive. Did you guys get that?

4

MR. HUGHES: Yeah, got it.

MR. STUBBS:  No, no, no. I don't think you get it. Have you ever like, do you know, have you ever like worked as a laborer?

MR. HUGHES: Yes.

MR. STUBBS: All right. What about all you other big dudes on the phone right now?

MR. HUGHES: Say, Todd, the lawyers aren't being deposed.

MR. SILVERSTEIN: This is Mr. Silverstein. Why don't we take his deposition? Let's take his deposition.

* * *

BY MR. HUGHES:

* * *

    Q.  Okay. So the flow line comes up out of the hole, and is there gas that is coming from the back side and oil, do you know?
    A.  Can you say it? I can draw you a picture of the process if you want.
    Q.  I think I have a photograph. I'm just going to --

MR. STUBBS: No, no, no. You are not going to do a photograph. You are not going to do a photograph. I mean, my guy, my guy knows what the hell he is talking about. You just ask him questions and he will answer the questions.

MR. HUGHES: He offered to draw something for me. Is that okay?

MR. STUBBS: Okay. I don't want you drawing anything.

THE WITNESS: Okay. I won't draw anything.

MR. STUBBS: I want you guys to talk because I want you guys to –   and all of the other big shot lawyers there on the line, I want you guys to just talk to my guy, you know. He's my guy.

* * *

MR. HUGHES: I understand that. I want to show some photographs from the Statoil incident report that has been produced to everybody.

5

MR. STUBBS: But I didn't sue Statoil.

MR. HUGHES: I know. These are just photographs that they took from the incident report. Okay.

MR. STUBBS: Okay. You know what, you know what guys, I mean, I mean like can I – you know, can I like fly up to North Dakota and just fucking hit you right in the middle of the forehead, with an upper cut? And that doesn't even come close to what my client went through. How about that? How about that?

MR. HUGHES: You know, I'm not minimizing what your client went through. I understand he was injured. I am just asking him questions about the incident, perfectly appropriate things to do.

MR. STUBBS: I know it's appropriate, but you know what, your representatives screwed up. Okay.

MR. HUGHES: That is not the subject for today. I'm trying to find out what your client knows about the incident. That's what I'm asking.

MR. STUBBS: My client knows – read the God damn complaint. That is exactly – no, no. That is exactly what happened.

MR. HUGHES: Todd, you can't keep doing this. Otherwise we are–

MR. HUGHES:  That is not the subject for today. I'm trying to find out what your client knows about the incident. That's what I'm asking. Todd, you can't keep doing this.

MR. STUBBS: My client knows – read the God damn Complaint.  That is exactly – no, no.  That is exactly what happened.

MR. HUGHES:  Todd, you can't keep doing this.  Otherwise, we are . . . .

(Doc. No. 58-2 (Exhibit B, pp. 29:25-33:25, 42:10-43:6, 43:7-44:10)).

With respect to Equinor's request for sanctions, plaintiff responds he did not personally engage in any conduct that could be deemed sanctionable and that he should not be penalized for his attorney's conduct at the deposition.

Because the conduct giving rise to the instant motion occurred during a deposition, it is

properly analyzed under Fed. R. Civ. P. 30(d)(2), which provides: "The court may impose an appropriate sanction–including the reasonable expenses and attorney's fees incurred by any party–on a person who impedes, delays, or frustrates the fair examination of a deponent."[2]

Having reviewed the record, the court is not inclined to impose sanctions beyond the issuance of this order. See Mazzeo v. Gibbons, No. 2:08-CV-01387, 2010 WL 3020021, at *2 (D. Nev. July 27, 2010) (imposing sanction in the form of memorializing counsel's misconduct in an order). First and foremost, it does not appear that plaintiff engaged in any obstructive behavior to warrant sanctions. Second, Stubbs's conduct was not endorsed or condoned by plaintiff and plaintiff should not have to bear the financial burden of it. Third, the imposition of costs or fees on Stubbs would not serve any deterrent purpose of Rule 30(d)(2) as Stubbs is no longer representing plaintiff in this case. Fourth, it is not entirely clear whether Stubbs received the requisite notice of Equinor's motion given that he is no longer plaintiff's counsel of record. Sec. Nat. Bank of Sioux City, IA v. Day, 800 F.3d 936, 942 (8th Cir. 2015) ("It is well established that before sanctions are imposed under a federal rule or the court's inherent power, the intended recipient is to be given notice that sanctions against her are being considered and an opportunity to be heard." (internal quotation marks omitted)). Fifth, Equinor did not reach out to the court for its assistance during the deposition and arguably neglected to fulfill its obligations under the local rules prior to filing the instant motion. See D.N.D. Civ. L.R. 37.1(A) ("The parties may not file a discovery motion (e.g., a motion to compel discovery, motion for sanctions, or motion for protective order until the parties have conferred, either in person or by telephone, for the purpose of making a reasonable, good faith effort to resolve the dispute without involving the court." (emphasis added); D.N.D. Civ. L.R. 37.1(B)

---

[2] A Court may also impose sanctions against an attorney personally for conduct at a deposition pursuant to 28 U.S.C. § 1927 and/or its inherent authority.

(obliging the parties to participate in an telephonic conference with the magistrate judge prior to filing a discovery motion)).  Sixth, Stubbs has endured the indignities of being fired by plaintiff in the middle of a deposition and of having his churlishness and general lack of professionalism memorialized for posterity in this order.  This is sanction enough.

### B.      Request to Compel Plaintiff's Appearance in North Dakota

With respect to plaintiff's future deposition, the court is not inclined to require that he travel to North Dakota for it.  First, it would appear from plaintiff's response to defendant's motion that plaintiff is willing to submit to a second deposition and that substitute counsel is conferring with opposing counsel to schedule one.  Second, the court is not inclined to require defendant to travel given the current pandemic and associated health risks. Third, it appears that counsel for Equinor appeared at plaintiff's first deposition by video.  It stands to reason that they can do so a second time.

### C.      Request to Amend Pretrial Deadlines

Equinor asserts that the circumstances warrant an extension of certain pretrial deadlines.  Plaintiff agrees that a modest extension is warranted.

Given the present posture of this case and in light of plaintiff's recent retention of new counsel, who will need a modicum of time "get up to speed," the court is inclined to extend the pretrial deadlines by 90 days.

### III.    CONCLUSION

Equinor's motion (Doc. Nos. 58 and 59) is **GRANTED IN PART AND DENIED IN PART**.  The court in its discretion denies the motion insofar as it requests an award of costs or fees.  The court will not require plaintiff to travel to North Dakota for his second deposition.  The parties

are encouraged to use the technology at their disposal to conduct plaintiff's second deposition in a manner that minimizes the need for extensive travel. The court amends the pretrial deadlines as follows:

1. The parties shall have until April 15, 2021, to complete fact discovery and file discovery motions.

2. Plaintiff, Third-Party Plaintiff, and Fourth-Party Plaintiff shall have until May 2, 2021, to make expert disclosures regarding issues on which they bear the burden of proof.

3. Rebuttal experts are due by May 30, 2021.

4. Discovery depositions of expert witnesses are due by August 3, 2021.

5. The parties shall have until June 9, 2021, to file other dispositve motions.

**IT IS SO ORDERED.**

Dated this 15th day of December, 2020.

>   */s/ Clare R. Hochhalter*
>   Clare R. Hochhalter, Magistrate Judge
>   United States District Cour